IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>vs.<br><br>THOMAS W. HIRD,<br><br>           Defendant. | 4:19CR3038<br><br>GOVERNMENT SENTENCING BRIEF |

COMES NOW, Plaintiff, the United States of America, and provides this sentencing brief. The Government adopts the Revised Presentence Investigation Report ("RPSR") prepared by the United States Probation Office. The Government believes a sentence of imprisonment of 33 months, which is at the high end of the advisory guideline range, is appropriate in this case and that the Defendant's request for a sentence of probation would not be an effective means to accomplish the goals of sentencing.

## Background

Government relies on the facts and evidence as presented during the seven-day trial of this matter and as additionally outlined in the RPSR.

## Law and Argument

### I.    Mr. Hird's objections to the RPSR are without merit.

Within the RPSR, Mr. Hird objects to Paragraphs 7, 9, and 11 and additionally appears to object to the application of the Section 3C1.1, "Obstruction of Justice" enhancement. *See* RPSR Addendum. Each of these objections, should they be made for sentencing, are without merit. Paragraphs 7, 9, and 11 are each part of the prosecution version of the offense. The Government

1

avers that each of the facts provided in these paragraphs were proven at trial through extensive trial exhibits and testimony.

Regarding the Obstruction of Justice Enhancement, Mr. Hird appears to argue that the grounds the Government raised to the probation office as evidence of obstruction, are merely assumptions made by the Government and were disproven by the Defendant and his wife's sworn testimony. For example, Mr. Hird argues that the Government merely assumed that Mr. Hird would access his safe deposit box after conducting cash exchange transactions. However, the Government admitted at trial the log showing Mr. Hird's access to his safe deposit box along with testimony of the bank tellers describing how Mr. Hird often accessed his safe deposit box following the cash exchange transactions and Special Agent ("SA") Kim Taylor's testimony stating that after reviewing the log, she concluded that Mr. Hird's safe deposit box access nearly always occurred on the same day as his cash exchange activity. *See* Government Trial Exhibit 7B. Accordingly, Mr. Hird's objection is without merit—valid conclusions reached after the presentation of evidence are not mere assumptions. The obstruction of justice enhancement is supported by more than assumptions, it is based on a culmination of evidence presented at trial which tend to show that Mr. Hird repeatedly provided misstatements at trial as is further outlined in the Section III below. Should Mr. Hird belatedly object to the Obstruction of Justice enhancement further, specifically Paragraph 19 of the RPSR, the Government requests the ability to put on further evidence and argument should the Court deem it necessary.

### II. Mr. Hird's family responsibilities and community ties do not warrant a sentence outside of the sentencing guidelines or a sentence of probation.

Mr. Hird has made a sentencing argument to probation that his wife and mother would suffer if he were to be imprisoned. *See* RPSR ¶¶ 45 and 76. The Government disagrees that a variance or departure should be granted on this basis. "Family ties and responsibilities . . . are not

ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. The Eighth Circuit has explicitly noted that it disfavors sentencing leniency on the basis of family responsibility "absent some showing that the Defendant is a necessary caregiver for a family member suffering from a severe disability or condition." *United States v. Wadena*, 470 F. 3d 735, 740 (8th Cir. 2006). Only the most "extraordinary family circumstances" justify below guidelines sentences. *United States v. Goff,* 20 F.3d 918, 921 (8th Cir. 1994) (citing *United States v. Vidrickson*, 998 F.2d 601, 603 (8th Cir. 1993)).

Mr. Hird, in part, argues that his wife is Vietnamese and "very limited in her abilities to function by herself" and implying that Mrs. Hird cannot function without him. RPSR ¶ 76. This argument is directly contradicted by the evidence, but even if it were true, it is not a sufficient reason for departure or variance.

Pursuant to Mrs. Hird's immigration records she has been in the United States for many years – she has been a legal permanent resident of the United States since December of 2005 and became a Naturalized United States Citizen around 2015. *See* Government trial exhibit 82 at p. 2. Before Mr. Hird and Mrs. Hird married, she managed the nail salon on her own and all the bank accounts were in her name, indicating she knows how to manage the business without Mr. Hird – and incidentally, during that time, evidence showed that the checks were made payable to the business and deposited in the business bank account. Mrs. Hird also proved herself capable during her testimony at trial. Although Mr. Hird requested an interpreter for her at trial, she did not utilize her interpreter and completed testimony in English.

Mrs. Hird has a substantial support system outside of Mr. Hird. The numerous letters Mr. Hird has submitted to the Court for sentencing show that the Hirds have a very loyal customer base and dedicated church community. Filing No. 170. Mrs. Hird also has a supportive family who

3

often visit. As mentioned during Mr. Hird's closing argument (despite a sustained objection of the Government) six family members travelled to stay with the Hirds for an extended time immediately following trial. In addition, Mrs. Hird's son Vu Le, who goes by the name Tony, has lived with the Hirds in Kearney for years and manages the salon along with the couple. Regarding his mother, Mr. Hird has four other siblings, two of whom live in Nebraska and are capable of assisting his mother.

In the vast majority of cases, Defendants leave behind loving family members, all of whom are adversely impacted by being separated by a spouse, sibling, parent or child. *United States v. Shortt*, 919 F.2d 1325, 1328 (8th Cir. 1990) (reversing departure based upon family circumstances and reasoning that "[a]ll families suffer when one of their members goes to prison."). Mr. Hird is not unique in that respect. He "has not shown his family circumstances are substantially different from those facing families of any other defendant about to be incarcerated." *United States v. King*, 280 F. 3d 886, 889 (8th Cir. 2002); *see also Johnson*, 908 F. 2d at 399. His request for a sentence of probation due to his family ties and circumstances should be denied.

### III. A Sentence at the high end of the advisory guideline range is supported by the Section 3553(a) factors.

While the United States Sentencing Guidelines are not mandatory, it is this Court's "responsibility to select a sentence that [is] 'sufficient, but not greater than necessary' to comply with the statutory sentencing purposes." *United States v. Gray*, 577 F.3d 947, 950 (8th Cir. 2009) (quoting 18 U.S.C. § 3553(a)). "[A] district court's job is not to impose a reasonable sentence, but rather to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a). *United States v. Lytle*, 336 Fed. Appx. 587, 588 (8th Cir. 2009). In arriving at its sentence, the Court must carefully consider all of the statutory factors set forth in 18 U.S.C. §

4

3553(a). Among the relevant 18 U.S.C. § 3553(a) factors to be considered in this case, is whether a sentence would reflect the seriousness of the offense, and to provide just punishment.

The Court must also consider what kind of sentence will "promote respect for the law." The Government believes that this factor is especially important in crafting a sentence in this case for several reasons. First, Mr. Hird committed this crime year after year taking deliberate actions to avoid paying his taxes and tried to hide his conduct after he had been caught. Second, after this case was charged and Mr. Hird began representing himself pro se, he filed numerous frivolous motions and made misrepresentations to the Court, showing a lack of respect for this Court. Finally, Mr. Hird made and supported numerous falsehoods before the jury at trial and repeatedly attempted to violate the Court's order on the motion in limine, further showing a disrespect to the jury, judge, and rule of law.

To begin, Mr. Hird knowingly made false statements on his tax returns for years beginning in at least 2009. He took deliberate actions: putting up signs on the wall telling customers to make their checks payable to him personally; encouraging customers to pay by cash or check; lying to his tax preparer when she would directly question him about his figures or whether he had any additional unreported receipts. He then tried to hide his conduct after he realized the IRS was investigating him including changing all accounts and business information to his wife's name. When he was interviewed by SA Taylor, he lied to her about many things that were relevant to the investigation, instead of merely declining to be interviewed or to answer questions.[1] Finally, after the interview, he stopped his cash exchange activity—which the Government believes supports

---

[1] Mr. Hird indicates within the addendum to the RPSR that he was not intending to lie but to "protect[] [his] wifes private business dealings[.]" However, Mr. Hird admitted several times at trial, including while under oath, that he "lied" to SA Taylor in the interview. Additionally, Mr. Hird was informed at the beginning of the interview that he did not have to answer questions and could stop answering questions at any time.

the conclusion that he was trying to hide his illegal activity, not realizing the bank had been monitoring and recording his activity before the IRS interview. All these actions show a lack of respect for tax laws of the United States and for law enforcement.

Mr. Hird's lack of respect for the law did not end with the investigation but continued during the prosecution and Court process. Throughout the pendency of this matter, Mr. Hird has filed numerous frivolous pro se motions in which he often made misrepresentations to the Court.[2] *See, e.g.*, Filing Nos. 27 and 28. Some of these frivolous motions were nearly identical to motions he had filed previously that this Court had already denied. *See, e.g.*, Filing Nos. 41, 45 and 48; 120 and 123. When this matter went to trial, Mr. Hird continued making frivolous motions and misrepresentations. *See, e.g.*, Filing no. 142.

The misrepresentations during trial spanned nearly every stage of the seven-day trial. His misrepresentations during the course of trial began as early as jury selection when Mr. Hird told the second panel of prospective jurors that the nail salon belonged to his wife and not himself. He then held up his hands and jokingly said to the panel, 'Does it look like I go into a nail salon to you?' suggesting to the prospective jurors that he had nothing to do with the business.[3] This suggestion made to the prospective jurors, some of whom ended up serving as jurors during the trial, was repeatedly and emphatically disproven by the evidence and testimony at trial. Mr. Hird played and still plays an active role in the management of the salon and spends a great deal of time

---

[2] For example, in multiple filings, Mr. Hird attested that he has "never made, or subscribed to make, or file any Form 1040 Individual Income Tax Return, or any other Income Tax Return, for the IRS." Filing Nos. 27, 28. Nevertheless, evidence was presented at trial proving and Mr. Hird was found guilty of filing *false* tax returns numerous years. The evidence at trial also showed that he has filed tax returns all of his adult life—which is a direct contradiction to his statements in the filings. In another example, Mr. Hird repeatedly represented to the Court that he contracted the COVID-19 virus and needed the trial in this matter to be continued due to the illness. *See* Filing No. 87. However, according to medical records Mr. Hird never had COVID-19 despite being tested numerous times. RPSR ¶ 46.

[3] The Government does not recall the exact words used by Mr. Hird at this time, so this quote is merely a paraphrase.

there. RPSR ¶ 49. Once his misstatement was disproven, he began admitting that he spends time in the salon and now appears to suggest he should not be imprisoned because he is an invaluable staff member at the nail salon because only he can provide therapeutic pedicures for certain customers. *See* RPSR ¶¶ 49, 50 and 76.

The above-described example was the typical cycle at trial: Mr. Hird would make a misrepresentation before the jury and Court, but when his misrepresentation was proved false by evidence, he would switch tactics and provide new falsehoods to cover his tracks and create a new defense. Another example of this was after the Government had shown holes in Mr. Hird's defense regarding the alleged micro-loans he provided to friends, Mr. Hird then claimed that the large bills he took from the bank (after exchanged the small bills and business's checks), were for cash purchases for the salon which he would not report on his taxes—meaning that there was no actual tax loss by his failure to report cash and check receipts. However, evidence from the business bank account proved that Mr. Hird and his wife would write themselves checks reimbursing themselves for cash purchases, meaning those expenses would be reflected within their bank account that was used to provide the tax figures. In addition, the tax documentation Mr. Hird provided to his tax preparer, Mrs. Eurek, had a specific line item reporting his cash *expenses*. And finally, as shown by Ms. Eurek's documentation for tax year 2015, Mr. Hird informed her he found some additional cash expenses but when she asked him in response if he had additional cash receipts, he said he did not. *See* Trial exhibit 46 at p. 36. As AUSA Russell aptly phrased it during his rebuttal closing, the Government was forced to play a game of "whack-a-mole" during the seven-day trial, repeatedly having to switch tactics and track down evidence within the voluminous trial evidence to disprove Mr. Hird's new daily defense and misrepresentations.

7

Mr. Hird also made repeated attempts throughout the trial to violate the Court's Order on the Government's Motion in Limine. Mr. Hird attempted during every stage of the seven-day trial to violate this order. As the Court noted in its recent ruling on Mr. Hird's second Notice of Appeal, "The defendant could (perhaps) be forgiven for not knowing that the first time . . . , but he has no excuse this time—his second [time]." Filing No. 173. The Government's objections to Mr. Hird's attempts to violate the Court's Order on the Motion in Limine were consistently sustained and Mr. Hird was reminded repeatedly that he was not to discuss the alleged "assessments." Nevertheless, he continually tried to violate the Court's Order.[4] Mr. Hird's attempts to violate the order were not unknowing, they were strategic and deliberate. Within the RPSR Mr. Hird still appears to argue that the Court had no authority to issue its ruling on the motion in limine, further showing that his actions to disobey the Court's order during trial were deliberate. RPSR ¶ 19. Mr. Hird's actions during the pretrial proceedings and during trial, as well as actions he continues to this day, show a lack of respect for the authority of the Court and the rule of law.

It is the Government's position that upon consideration of all the Section 33553(a) factors, Mr. Hird should receive a sentence of imprisonment of 33 months and that this sentence would be sufficient, but not greater than necessary to accomplish the goals of sentencing, particularly to promote respect for the law. Mr. Hird was found guilty of providing false statements on his tax returns and his false statements have continued since then showing a disrespect of the law in nearly all its forms. The Government additionally notes that Mr. Hird has been shown to be a very capable at providing misleading information when it is in his interest, accordingly, the Government does

---

[4] As part of its ruling, the Court ordered that Mr. Hird was not to "introduce evidence or raise arguments that he actually had no or lessened tax deficiency." *See* filing no. 130. The Court further ordered that as part of this argument, Mr. Hird could not assert or argue that he had requested a tax assessment from the IRS each year. *See Id.*

8

not believe a sentence of supervision through probation, as he requests, would be an effective or provide appropriate punishment.

## Conclusion

For all the reasons mentioned above, it is the Government's position that Mr. Hird should receive a sentence of imprisonment of 33 months.

                                      Respectfully submitted,

                                      Jan W. Sharp
                                      Acting United States Attorney
                                      District of Nebraska

By:    s/ Tessie Smith
        TESSIE L. SMITH, #25828
        Assistant U.S. Attorney
        100 Centennial Mall North
        487 Federal Building
        Lincoln, NE  68508-3865
        Tel:  (402) 437-5241
        Fax:  (402) 437-5390